**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ACTIFIO, INC., | C.A. No. 1:20-886-CFC |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| RUBRIK, INC., | **REDACTED
PUBLIC VERSION** |
| Defendant. | |

**PLAINTIFF ACTIFIO'S OPENING BRIEF IN SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION**

OF COUNSEL

Maximilian A. Grant
max.grant@lw.com
Tiffany Weston
Tiffany.weston@lw.com
LATHAM & WATKINS, LLP
555 Eleventh Street, N.W., Ste. 1000
Washington, DC 20004
Tel: (202) 637-2200

S. Giri Pathmanaban
giri.pathmanaban@lw.com
LATHAM & WATKINS, LLP
140 Scott Drive
Menlo Park, CA 95025
Tel: (650) 328-4600

Kelly E. Farnan (#4395)
farnan@rlf.com
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7705

*Attorneys for Plaintiff Actifio, Inc.*

Marc Zubick
marc.zubick@lw.com
LATHAM & WATKINS, LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7606

Nathanial McPherson
nathanial.mcpherson@lw.com
LATHAM & WATKINS, LLP
200 Clarendon Street
Boston, MA 02116
Tel:  (617) 880-4572

**TABLE OF CONTENTS**

<b>Page</b>

I.      INTRODUCTION ......................................................................................1

II.     BACKGROUND ......................................................................................4

        A.      Actifio................................................................................................4

        B.      Rubrik ...............................................................................................6

        C.      Actifio's '435 patent.........................................................................8

III.    ARGUMENT.........................................................................................10

        A.      Actifio is likely to succeed on its patent infringement claims ............11

        B.      Actifio will be irreparably absent the requested injunction ................16

        C.      The equities strongly favor a preliminary injunction..........................25

        D.      Injunctive relief will serve the public interest....................................26

IV.     CONCLUSION.......................................................................................26

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Abbott Labs v. Sandoz, Inc.*,
  544 F.3d 1341 (Fed. Cir. 2008) ..........................................................................19

*Apple Inc. v. Samsung Elecs. Co.*,
  678 F.3d 1314 (Fed. Cir. 2012) .........................................................................18

*Apple Inc. v. Samsung Elecs. Co.*,
  735 F.3d 1352 (Fed. Cir. 2013) .........................................................................24

*Apple Inc. v. Samsung Elecs. Co.*,
  809 F.3d 633 (Fed. Cir. 2015) ...........................................................................26

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012) .............................................................16, 19, 21

*Edwards Lifesciences AG v. CoreValve, Inc.*,
  No. 08-91 (GMS) 2014 WL 1493187 (D. Del. Apr. 15, 2014).........................20

*Genband US LLC v. Metaswitch Networks Corp.*,
  861 F.3d 1378 (Fed. Cir. 2017) .........................................................................24

*M/A Com Tech. Solutions Holdings, Inc. v. Laird Techs., Inc.*,
  No. 14-181-LPS, 2014 WL 2727198 (D. Del. June 13, 2014)..........................23

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
  848 F.3d 1358 (Fed. Cir. 2017) ...................................................................17, 18

*Morris & Assocs., Inc. v. Cooling & Applied Tech., Inc.*,
  No. 5:07-CV-23, 2010 WL 4484640 (E.D.N.C. July 30, 2010) .......................25

*Nevro Corp. v. Stimware Techs., Inc.*,
  No. 19-325, 2019 WL 3322368 (D. Del. July 24, 2019).......................11, 25, 26

*Presidio Components, Inc. v. Am Tech. Ceramics Corp.*,
  702 F.3d 1351 (Fed. Cir. 2012) .........................................................................17

*Tinnus Enters., LLC v. Telebrands Corp.*,
  846 F.3d 1190 (Fed. Cir. 2017) .........................................................................16

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
　748 F.3d 1159 (Fed. Cir. 2014) ....................................................................11, 17

**Statutes**

35 U.S.C. § 282 ........................................................................................................18

***All emphases herein are added unless otherwise noted.***

## I.    INTRODUCTION

Actifio moves to preliminarily enjoin its direct competitor Rubrik's newly-introduced Andes 5.2 update until this case is resolved.  Although Actifio has sued on four patents, Actifio seeks a narrowly-tailored injunction focused on just three claims from one patent ('435 patent claims 1, 9, 17) to prevent the irreparable harm that Rubrik's most recent infringement will impose on Actifio before the Court can order the permanent injunction that the merits of this case warrant.

This case presents the classic situation of a late market entrant using unlawful means to capitalize on the hard work and success of the market innovator.  Here, the innovator is Actifio.  Actifio set out in 2009 to provide a simpler, more efficient data management solution for businesses in an increasingly data-driven marketplace.  Storage industry analysts credit Actifio with pioneering a new field of data management called "copy data management," (Ex. 2 at 22), that eliminated the "problems associated with proliferating copies of data."  Ex. 3 at 3.

Through significant innovation and monetary investment, Actifio developed a groundbreaking product.   Rather than creating multiple copies of an organization's vast data, Actifio's patented technology makes one "golden copy" and leverages that golden copy to create an unlimited number of virtual copies for use by multiple applications, across any hardware infrastructure, with no additional storage needed.  Although the end result was "radically simple," the means to that

end was anything but.  It required Actifio to build from the ground-up a new set of software tools to manage the increasingly complicated web of data within an organization.  Actifio's new approach cuts a typical organization's storage needs by up to 90%, lowers costs, and provides a "unified" data management solution.  Declaration of Brian Reagan ¶16 ("Reagan ¶").  The market responded to Actifio, and by the end of 2012, Actifio had achieved 500% year-over-year growth.  Ex. 4 at 2.

Defendant Rubrik entered the copy data management space years later.  Seeking to exploit Actifio's success while avoiding the required effort and investment, Rubrik mimicked Actifio's patented technology and purported to offer many of the same benefits.  Echoing Actifio, Rubrik claimed that its product (1) uses "just one 'golden image'" of data to provide multiple copies "without a storage penalty"; (2) provides "radically simple" data management; and (3) offers a "unified" solution for backup, data protection, and disaster recovery.  Ex. 9 at 3, 5.

While Rubrik has been copying portions of Actifio's patented technology for years, until recently Rubrik's product still lagged far behind Actifio's in a crucial area of copy data management: database backups and recovery.  Actifio's patented product gives its customers the ability to deploy virtual copies of large databases within minutes, allowing database administrators and developers to use those databases for any number of applications.  Although Rubrik has claimed for some

time that its product offers that capability, in reality it could not deliver those features to its customers. And because Rubrik had not yet truly duplicated this important aspect of Actifio's technology, Actifio still enjoyed a significant competitive edge, especially for managing copies of Oracle databases (one of the most popular kinds). Reagan ¶¶35-40.

Not so much anymore. On April 28, 2020, Rubrik announced the new version of its CDM software, Andes 5.2, which Rubrik asserts puts "more power at your DBA's [database administrator's] fingertips," and offers, among other things, "advanced cloning options" for Oracle databases. Ex. 5 at 1. By making—*and touting*—these improvements that incorporate Actifio's patented inventions, Rubrik seeks to improperly copy and eliminate Actifio's most important competitive edge in the copy data management market that Actifio created.

If Andes 5.2 is not removed from the market pending trial, Actifio is likely to suffer lost customers, price erosion, and reputational harm before this case is tried to a jury. In contrast, Rubrik is not likely to be harmed. Andes 5.2 is very new; Rubrik's existing customers will be free to keep using the earlier version of Rubrik's product, and Rubrik can keep selling the earlier version of its product to new customers through trial.

The Court should preliminarily enjoin Rubrik Andes 5.2 update until a trial on the merits can be held.

## II. BACKGROUND

### A. Actifio

Actifio is a software company that specializes in data management. Actifio's founders, Ash Ashutosh and David Chang, pioneered a new field of data management called copy data management (CDM). Reagan ¶¶6-8  Actifio, and CDM generally, started with the idea that—even as enterprises add more data every day—"more data doesn't need to mean more storage and infrastructure." Ex. 6 at 2. Before Actifio, enterprises made dozens of copies of data for different uses such as backup, archiving, test and development work, and data analytics, each use case having its own software and hardware requirements.  With each additional copy made for each additional use, terabytes of data turned into petabytes that required more storage hardware and infrastructure. Reagan ¶¶9-13.

Actifio solved this problem with a solution that made things "radically simple" for its customers.  Ex. 9 at 5.  Rather than making multiple copies of data, each of which is managed by a different storage platform, Actifio offers a single platform that makes one "golden copy," and uses the golden copy to create "virtual" copies for various applications.  This is illustrated in the figure below:



FIG. 2

With Actifio's technology, enterprises "define[] their business requirements" for the data with a "Service Level Agreement (SLA)," in which they specify the number of backups to make and what applications to use the data for. Actifio does the rest. Based on the user-provided SLA, Actifio creates and uses "virtual copies" of data "across the various storage repositories." Ex. 1, '435 patent, 6:32-34. The Court can view a summary tutorial of Actifio's technology at https://www.youtube.com/watch?v=k2-1eiuGzYw.

One of the key applications of copy data management is in managing copies of databases. Actifio uses its patented technology to virtualize and make copies of large databases that host a company's vast data within minutes for various uses.

## B.    Rubrik

Rubrik was formed in 2014. Since inception, Rubrik has consistently followed in Actifio's footsteps and, as recognized by industry analysts such as Gartner and IDC, became a direct competitor. Reagan ¶29; Malaspina ¶¶73-76. Actifio and Rubrik actively compete head-to-head for customers. Reagan ¶¶21-25; Malaspina ¶¶61-78. Rubrik has hired away Actifio sales representatives, targeted Actifio's customers and potential customers, and competes with Actifio for distributors. Reagan ¶¶21-25.

Parroting Actifio's patented technology, Rubrik claimed that its "Rubrik Cloud Data Management" product ("RCDM") "reduces management complexity [of data] with a converged software platform that is *radically simple*." Ex. 9 at 5. And it uses user-defined "service level agreements (SLAs) across the entire data lifecycle." *Id*. at 4. And more: it offers "copy data management," by enabling "multiple copies of data from one 'golden image.'" *Id*. at 7.

When Rubrik first entered the market, it targeted the virtual machine ("VMware") data protection segment pioneered by Actifio. Ex. 7 at 2 ("Rubrik is initially focusing on data protection for VMware virtual environments."); Reagan

¶¶26-29.  Rubrik's entry created competition with Actifio, and Actifio's pricing nosedived by as much as ██ in three years.  Reagan ¶¶30-34; Malaspina ¶78.  The competition was so intense because Rubrik had a much bigger "megaphone" with which to tout its product's capabilities: at last count, the size of its sales and marketing team numbers in the many hundreds compared to Actifio's █-person team. Reagan ¶46.

So Actifio distinguished itself by focusing on its strength in databases— offering features no other company had—to win customers.  But Rubrik has closed that gap too: it introduced database support in 2017, again mimicking Actifio's technology.[1]  Although Rubrik has claimed to support databases since at least that time, Rubrik's actual product fell far short of Actifio's.  Actifio trained its sales and marketing team to highlight its advantages.  Ex. 10 at 2, ("Instant Mount" was unavailable on Rubrik); Ex. 11 at 10 (Rubrik didn't support Oracle Exadata environments).

Rubrik continued to improve, however, and in 2018 introduced several improvements to its Oracle implementation.  But it still lagged behind Actifio in several ways.  For one, Rubrik did not appear to support databases running on the Oracle "Exadata" platform.  For another, it did not have a feature called "roll-

---

[1] https://www.youtube.com/watch?v=o1etoXHwt_o&t=21s (last visited June 23, 2020).

forward recovery"—the ability to automatically apply Oracle's transaction logs to point in time copies of a databases. And its ability to create instant clones and use those clones on different platforms remained questionable.[2] Reagan ¶¶38-40.

Rubrik's release of Andes 5.2, however, seeks to bridge those gaps to Actifio's patented technology. Reagan ¶¶41-46. On April 28, 2020 Rubrik announced its Andes 5.2 upgrade which includes improvements that give "more power to the DBAs," especially with Oracle databases, mirroring Actifio's patented functionality. Rubrik's new release, among other things, "improve[s] development cycle time [for Oracle DBAs] by allowing them to create database test/dev clones," offers "expanded platform support" for "Exadata" platforms, and provides "Roll-forward Recovery."

These are features that Actifio has long delivered to customers. *Id*. Rubrik now once again appears poised to improperly exploit Actifio's patented technology, pushing its product that incorporates Actifio's patented technology through the use of its much larger marketing and sales organization. *Id.*

## C.    Actifio's '435 patent

Actifio's U.S. Patent 9,495,435 describes and claims methods Actifio uses to back up databases from a "remote host." '435 patent, 2:24-27, claim 1. The setup

---

[2] This technology is disclosed and claimed in Actifio's Patent No. 10,013,313, which is asserted in this action. Pending the limited, early discovery Actifio seeks, Actifio may add that patent to this motion.

is shown in Fig. 20A, which Dr. Erez Zadok explains in his expert declaration. See Declaration of Erez Zadok ("Zadok ¶") ¶¶ 57-68.



The host (2001) is a database server, which has installed on it an "RDBMS Agent"— a tool provided by the database vendor. For Oracle databases, that tool is

called "RMAN." '435 patent, 47:25-28. The "VDP System" is Actifio's appliance (either a physical box or software offered over the cloud).

In Actifio's patented system, a user sets a "policy" for creating periodic database backups. For example, the policy might be "back up at 12:05am" every day. The system transmits a backup request to the remote host, along with a "staging disk." '435 patent, 46:16-21. The remote host uses the RDBMS tool (*e.g.*, Oracle's RMAN tool) to perform a full backup of the volume of database storage onto the staging disk. The system next takes a "point-in-time image" of the staging disk—a snapshot as it existed after a first full backup of the database at a first point in time. The system then transmits a second backup request (per the user-defined policy) at a second time. *Id.*, 48:5-30. Next, the database backup tool performs an incremental backup of the database (*e.g.*, back up only the changes made since the original backup) to the staging disk, a second point-in-time image. These point-in-time images preserve the database structure and can be restored as an operational database. *Id.*, 48:31-33; Zadok ¶¶57-68.

III. **ARGUMENT**

Actifio seeks a narrowly-tailored preliminary injunction focused on just three claims from one patent ('435 patent, claims 1, 9, 17) directed at Rubrik's recent Andes 5.2 update.

A plaintiff seeking a preliminary injunction must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014) (citation omitted). Actifio satisfies the four-factor test for a preliminary injunction against Andes 5.2.

## A.    Actifio is likely to succeed on its patent infringement claims

For likelihood of success, Actifio must show that it will likely prove that Rubrik's RCDM product[3] infringes at least one claim of the '435 patent. *Id.* To defeat such a showing, Rubrik must show a substantial question of infringement or validity. *Id.*

### 1.    Actifio will likely prove that Rubrik infringes the '435 patent

Determining infringement requires a two-step analysis: "First, the court determines the scope and meaning of the patent claims asserted ... [and then] the properly construed claims are compared to the allegedly infringing device." *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003) (citation omitted).

Here, no claim construction is necessary, and the claim terms should be given their plain and ordinary meaning. *Nevro Corp. v. Stimware Techs., Inc*., 2019 WL

---

[3] Although RCDM infringes with or without the latest Andes 5.2 update, Actifio only seeks to preliminarily enjoin Andes 5.2.

3322368, at *7 (D. Del. July 24, 2019). Under those plain meanings, infringement is a straightforward issue: Rubrik's publicly available documents, videos, and webinars show how its product practices each of the claimed elements of at least claims 1, 9, and 17 of the '435 patent. These claims are attached as Appendix 1. Given the length of the claims, Actifio has annotated claim elements in those charts with identifiers, like "element [1a]" and "[1b]," etc., which match the identifications provided in this brief. Dr. Erez Zadok details precisely how RCDM meets each limitation of the Asserted Claims. Zadok ¶¶77-157.

RCDM meets claim 1's limitation [1a]. Rubrik explains that RCDM uses a "Service Level Agreement" to activate a protection policy to protect databases. Rubrik's documents explain, for example, that to back up Oracle databases, "[o]nce the Oracle Database environment has been discovered, users can apply **SLA policies** at the host, instance, or database level directly from the Rubrik UI or API." Ex. 12; Zadok ¶86-96. The abbreviation "SLA" refers to a "service level agreement," a "protection policy." '435 patent, 46:10-14 ("A protection policy is part of SLA (service level agreement)"). The user declares, for example, the frequency of the backups to take of the database. Zadok ¶¶90-93. Thus, RCDM meets limitation [1a].

RCDM meets limitation [1b]. Rubrik explains that once the user has applied an SLA policy to a database, "***Rubrik handles the scheduling and maintenance of***

***all their associated tasks*.**" Ex. 13 at 11. This means RCDM transmits instructions to the remote Oracle Database server per the backup policies defined by the user's SLA to back up the volume of database storage that includes the database to be protected, according an SLA policy, starting at a first time. Zadok ¶97-107. Consequently, RCDM meets limitation [1b].

RCDM meets limitation [1c]. RCDM creates a "managed volume," which is a "staging disk" presented to the database host, as in claim 1. '435 patent, Fig. 19A (using "staging ***disk***" interchangeably with "staging ***volume***"); Zadok ¶¶110-111. RCDM mounts this "managed volume" on a remote Oracle database server (the claimed "remote host"); the remote host can perform a "full backup" using a database-vendor tool, Oracle's RMAN tool. Ex. 14 at 26 ("to begin using a Managed Volume as a target for RMAN backups, the exported channels must be mounted on the Oracle hosts file system."); Zadok ¶¶112-116.

And the first backup is a "First Backup Full": Rubrik explains, referring to the figure below, that the first backup of an Oracle database is a "First Backup **Full**" at a first time (day 1), an "Image Backup" of the database—a point-in-time image that preserves the database structure. Ex. 15 at 5. Thus, RCDM meets limitation [1c].



RCDM meets limitation [1d]: Rubrik explains in a blog post, referring to the figure above that RCDM takes an "Image Backup" of the database—a point-in-time image that preserves the database structure. This point-in-time image can be loaded as an operational database: Rubrik provides a feature called "Live Mount," which "creates a new database from a point-in-time copy of the source database." Ex. 19 at 537. This Live Mount operation creates an operational database, just as described in the '435 patent. '435 patent, 48:31-37; Zadok ¶¶117-123. Thus, RCDM meets limitation [1d].

RCDM also meets limitations [1e], [1f], and [1g], in which the steps of limitations [1b]-[1d] are repeated, but only this time the point-in-time image is not a full copy of the database; as shown in the figure above, it is an "incremental backup[]," (taken on day 2), meaning it only includes incremental changes since the "full backup." This second time copy is restorable as an operational database using the Live Mount feature. Ex. 14 at 22 ("A point-in-time is selected for recovery and the Live Mount option clicked"); Zadok ¶¶124-142.

Thus, RCDM infringes claim 1 of the '435 patent. Zadok ¶¶77-142.

Separately, RCDM infringes dependent claim 9, which requires "the database storage is an Oracle database, and the database backup tool is the Oracle RMAN command." As explained above, RCDM backs up an Oracle database using Oracle's RMAN command. Ex. 14 at 26; Zadok ¶¶143-146. Thus, RCDM infringes claim 9. Zadok ¶¶143-146.

RCDM also infringes claim 17, which is the system claim analog to the method of claim 1. RCDM infringes claim 17 for the same reasons described above regarding claim 1. Zadok ¶¶147-157.

## 2.    The '435 patent is presumed valid and enforceable

The '435 patent enjoys a presumption of validity. 35 U.S.C. § 282. At the preliminary injunction stage, absent Rubrik proving that there is a substantial question to the contrary, the "presumption [of validity] is sufficient to establish a

likelihood of success on the validity issue." *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017).

### B. Actifio will be irreparably absent the requested injunction

"A party seeking a preliminary injunction must establish that it is likely to suffer irreparable harm if the preliminary injunction is not granted and there is a causal nexus between the alleged infringement and the alleged harm." *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017). Here, the Andes 5.2 update will (1) cause Actifio to lose business opportunities; (2) create significant and irreversible price erosion; (3) cause Actifio reputational harm; and (4) divert resources from research and development. These results each constitute irreparable harm and support Actifio's requested injunction. *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).

Dr. Peter Malaspina details how Actifio will be irreparably harmed absent a preliminary injunction. Malaspina ¶¶10-11, 59-110.

#### 1. Actifio will lose business opportunities

If Rubrik continues to sell RCDM with the Andes 5.2 update, Actifio will lose customers and sales that it otherwise would have deservedly enjoyed.

*First*, Actifio and Rubrik have competed in the marketplace since Rubrik's entry. Reagan ¶¶26-34; Malaspina ¶¶61-78. With Rubrik's Andes 5.2 update, that competition has deepened. Actifio and Rubrik now both offer highly similar

products that compete in the same market, for the same pool of customers, both using Actifio's patented technology. Reagan ¶¶26-47; Malaspina ¶¶61-78. This direct competition "strongly shows a probability for irreparable harm." *Trebro Mfg.*, 748 F.3d at 1171; *Presidio Components, Inc. v. Am Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) ("Direct competition in the same market … strongly" supports irreparable harm). And the relative resources available to the parties to market and sell the very aspects of their products covered by Actifio's patents hinders Actifio further. Rubrik has hundreds of salespeople; Actifio has dozens. With this recent technical parity, Rubrik can use that huge team to promote its use of Actifio's patented inventions and bleed Actifio in the marketplace. Reagan ¶¶46, 54.

To be sure, this is not strictly a two-player market. There are a small number of players besides Rubrik in the database segment. Reagan ¶47; Malaspina ¶¶21-34. But "'[t]he fact that other infringers may be in the marketplace does not negate [Actifio's] irreparable harm." *Metalcraft*, 848 F.3d at 1368-69 (citation omitted).

*Second*, because of the nature of the market and the technology at issue, the harm to Actifio from lost sales will be long lasting and difficult to quantify. Reagan ¶¶48-63; Malaspina ¶¶85-91. Actifio and Rubrik's products are licensed, creating a stream of revenue from a customer. Reagan ¶54; Malaspina ¶¶22-24, 28-29, 58, 91. Actifio also charges for support and maintenance—a significant part of its overall

revenue. *Id.* Usually, a revenue stream from a customer increases over time as the amount of data they engage Actifio to back up grows. Reagan ¶54; Malaspina ¶¶58, 91 Put otherwise, each customer lost to Rubrik will likely lead to a lost revenue stream that would have extended for years, creating long-standing irreparable harm. *Id*. *See MetalCraft*, 848 F.3d at 1368 ("loss of a potentially lifelong customer" impossible to quantify).

*Third*, high "switching costs" will exacerbate Actifio's harm. The technology at issue—backing up and deploying copies of complicated databases—requires customers to invest significant time and money. For example, customers need to integrate the database backup vendor's software into their IT ecosystem and train their IT personal to develop in-house expertise. Reagan ¶56; Malaspina ¶¶53-57. Thus, many customers who ultimately choose Rubrik over Actifio will likely remain with Rubrik after it is forced (through a permanent injunction) to remove Actifio's technology. *Id*. These high switching costs confirm that the harm to Actifio is irreparable. *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1336 (Fed. Cir. 2012) (the "initial decision regarding which product to purchase" can have serious implications that "are difficult to calculate" when the customers "may not be recaptured.") (citation omitted); *MetalCraft*, 848 F.3d at 1368.

*Fourth*, a portion of Actifio's sales are to resellers and OEM partners, both of whom sell Actifio's product to end users. Reagan ¶¶60-63; Malaspina ¶¶35-36; 104-

106. Resellers invest significant resources in training their sales force, and the competition from Andes 5.2 will likely reduce the incentives for these resellers to maintain that investment in Actifio. Reagan ¶61; Malaspina ¶105. Likewise, Actifio's relationships with OEM partners who incorporate Actifio's technology require significant joint investment. Reagan ¶62; Malaspina ¶106. If Rubrik removes Actifio's competitive advantage, these OEM partners may well consider joint investments with Rubrik instead, which will have corrosive impact on Actifio's future revenues that are difficult to quantify, imposing irreparable harm. *Id.*; *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1337 (Fed. Cir. 2013) (finding irreparable harm where patentee and infringer competed for a "limited number of tier one OEMs").

In all, Rubrik's Andes 5.2 update risks extended—likely permanent—loss of revenue from existing and new customers, which will irreparably harm Actifio.

### 2. Actifio's prices will be eroded

Actifio will be irreparably harmed by price erosion caused by Andes 5.2. The Federal Circuit recognizes the "erosion of markets, customers, and prices, is rarely reversible" and cannot be compensated by money alone. *Abbott Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008). And even when the erosion could be reversed, irreparable harm may result from "loss of customer goodwill" when the patentee restores original prices. *Celsis in Vitro*, 664 F.3d at 930.

As their competitive history illustrates, Actifio will likely need to lower prices because of Rubrik's database improvements. In 2015, Rubrik targeted the VMware data segment, in competition with Actifio. Ex. 7; Reagan ¶¶26-29; Malaspina ¶ 77. At the time, VMware comprised a significant part of Actifio's revenue. Reagan ¶30. Competition from Rubrik's entry triggered a nosedive in Actifio's prices. Reagan ¶¶30-33; Malaspina ¶78. From 2017 to 2020, Actifio's price per terabyte for VMware data dropped ■. *Id.* Worse, this erosion was magnified because Actifio was forced to discontinue other fees due to competition in the VMware segment.. Reagan ¶34. Actifio's VMware prices have never rebounded, demonstrating the likelihood of irreparable harm from Andes 5.2. Reagan ¶33; *Edwards Lifesciences AG v. CoreValve, Inc.*, 2014 WL 1493187, at *6 (D. Del. Apr. 15, 2014) ( "history of undercutting [patentee's] prices" supports finding irreparable harm)).

Rubrik is poised to repeat its improper erosion of Actifio's pricing in the database space. Through April 2020, despite Rubrik's database offerings, Actifio's superiority has allowed it to maintain a pricing premium. Reagan ¶¶35-40. But not anymore. Rubrik's Andes 5.2 has significantly narrowed the difference between products. Reagan ¶¶41-47; Malaspina ¶81. Without its unique technological solution, and forced to compete against its own patented technology, Actifio will again have lower its prices. Reagan ¶¶49, 55; Malaspina ¶¶92-100. Indeed, this scenario is currently playing out—■

20

████ . Reagan ¶41. Such price erosion will have long-lasting effects because of Actifio's inability to raise prices back up later. Reagan ¶55; Malaspina ¶100. *Celsis In Vitro*, 664 F.3d at 930.

In sum, Actifio faces serious and irreversible price erosion in the database copy data management space.

### 3. Actifio's reputation will be harmed

Actifio will suffer irreparable reputational harm stemming from Rubrik's release of Andes 5.2 absent a preliminary injunction. Malaspina ¶¶75-76, 109-110.

The highly regarded Gartner analyst reports make this point. These reports are a key driver of customers' purchasing decisions in the copy data management market. Reagan ¶¶50-52. In Gartner's 2019 report (which came before Andes 5.2), Gartner labeled both Actifio *and* Rubrik "Visionaries" in its influential "magic quadrant" shown below:



Ex. 45 at 2.

But Andes 5.2 has changed Gartner's calculus. 

y—deals often

rise and fall on the "quadrant" in which Gartner places a company.  *Id.*  The ratings can also negatively impact a host of issues ranging from attracting investment to attracting and retaining employees, resellers, and OEM partners.  *Id.*; Malaspina ¶100.  This reputational harm is irreparable.  *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344-45 (Fed. Cir. 2013) (finding irreparable harm when patentee's "reputation as an innovator will certainly be damaged if customers found the same 'innovations' appearing in competitors'" products).

### 4. Actifio's ability to invest in research and development

As an innovator, Actifio has always reinvested revenue into research and development.  Reagan ¶¶57-58; Malaspina ¶¶102-103.  Actifio's reinvestment in innovation is now threatened by the Andes 5.2 update.  The lost sales and price erosion that Actifio will suffer absent an injunction will force Actifio to divert resources into competing with Rubrik's recent infringement rather than into research and development, imposing further irreparable harm.  *Id.  M/A Com Tech. Solutions Holdings, Inc. v. Laird Techs., Inc*., 2014 WL 2727198, at \*5-7 (D. Del. June 13, 2014).

### 5. Actifio's irreparable harm is causally linked to Rubrik's infringement

Actifio must show a "causal nexus linking the harm and the infringing acts." This requires the patentee to only show "some connection between the patented

feature and demand for [the infringing] products." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364-65 (Fed. Cir. 2013). This is not "unduly demanding" and Actifio "may be able to make the causal connection ... through evidence of various kinds[.]" *Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1384 (Fed. Cir. 2017).

Actifio's irreparable harm arises directly from Rubrik's infringing sales of Andes 5.2, which are driven by features covered by the '435 patent. The ability to incrementally back-up databases and quickly restore large complicated Oracle databases on different platforms are central to the claims of the '435 patent; it is also a key driver of sales of Actifio's CDM product. Reagan ¶¶36, 38-45; Malaspina ¶¶37-42, 64, 79-82, 133. Many of Actifio's largest customers chose Actifio because of its strong database backup and restore capabilities, and its support of any Oracle environment, including Oracle Exadata. *Id.* Actifio has received industry accolades for its database back-up and restore capabilities, confirming the demand for—and the desirability of—the patented inventions. Reagan ¶37.

What's more, Rubrik itself claims that its customers say that "DBAs love the Live Mount feature," because "clones [copies] that took hours now only takes a few minutes." Ex. 17. Rubrik's release notes for Andes 5.2 underscore key features enabled by the '435 patent, such as achieving "near-zero" recovery time for "clon[ed]" databases, and cloning to "dissimilar hosts." Ex. 18. By touting the

improvement enabled by Actifio's patented technology, Rubrik has conceded its value to consumers. *Nevro*, 2019 WL 3322368, at \*15 (causal nexus where defendants documents show the patented technology "is ***a distinguishing feature*** that drives demand[.]").

## C.    The equities favor a preliminary injunction

Actifio is facing immediate and irreparable harm absent preliminary injunctive relief. Rubrik, on the other hand, will suffer little harm: Actifio's motion does not seek to have Rubrik's entire product line removed from the market. Rather, Actifio seeks to preserve its remaining patented competitive edge with a narrowly-tailored injunction directed at Rubrik's recent Andes 5.2 update.

If granted, that injunction would maintain what had been the status quo up until April 2020, when Rubrik released Andes 5.2. Malaspina ¶112. Rubrik will be free to offer its product, without that update, to customers. Its viability as a company is not at stake: Rubrik was a very successful company before Andes 5.2 and can keep selling the same products it sold previously if the Court grants this motion. *Id*. Consequently, the balance of hardships favors an injunction. *Id.* at ¶¶111-113. *Morris & Assocs., Inc. v. Cooling & Applied Tech., Inc*., 2010 WL 4484640, at \*10 (E.D.N.C. July 30, 2010) (balance of harms favored patentee based on defendant's ability to "sustain its business operations" using other products and services).

25

**D.  Injunctive relief will serve the public interest**

The public will be served by granting Actifio's requested injunction.  In weighing the public interest, courts consider whether there is some critical public interest in keeping RCDM's with Andes 5.2 on the market.  Here, Actifio "does not seek to enjoin the sale of lifesaving drugs, but to prevent [Rubrik] from profiting from the unauthorized use of infringing features." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015).  And the public can still purchase Rubrik's older product as well as Actifio's, further protecting the public interest.  *Nevro*, 2019 WL 3322368, at \*16.  *See also* Malaspina ¶¶114-116.

IV.  **CONCLUSION**

WHEREFORE, Actifio requests that the Court preliminarily enjoin Rubrik's distribution, manufacture, sales and/or offer for sales of its Andes 5.2 software update.


Dated:  July 6, 2020                                 RICHARDS, LAYTON & FINGER

By:  */s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
farnan@rlf.com
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7705

OF COUNSEL:

LATHAM & WATKINS, LLP
Maximilian A. Grant
max.grant@lw.com
Tiffany Weston
Tiffany.weston@lw.com
555 Eleventh Street, N.W., Ste. 1000
Washington, DC 20004
Tel: (202) 637-2200

S. Giri Pathmanaban
giri.pathmanaban@lw.com
140 Scott Drive
Menlo Park, CA 95025
Tel:  (650) 328-4600

Marc Zubick
marc.zubick@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7606

Nathanial McPherson
nathanial.mcpherson@lw.com
200 Clarendon Street
Boston, MA 02116
Tel:  (617) 880-4572

*Counsel for Plaintiff Actifio, Inc.*

## <u>CERTIFICATION</u>

I hereby certify that the word count is a total of 4990 words, as calculated by Microsoft Word's word-count feature, 14-point Times New Roman font. This total excludes the cover page, signature block, the table of contents, the table of authorities, the appendix, certification, and signatures.

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)

███████████

## Claims Appendix

### Claim 1:

[1 preamble] A computerized method for backing up remote database storage such that a volume on the remote database storage can be incrementally backed up to create a series of incremental point-in-time images of the volume over time, such that each point-in-time image that can be individually loaded as an operational database, comprising:

[1a] activating, by a computing device, a protection policy for database storage at a remote host;

[1b] transmitting, by the computing device, a first backup request at a first time to the remote host comprising data indicative of a volume on the database storage to back up according to the protection policy;

[1c] presenting, by the computing device, a staging disk to the remote host so that the remote host can perform a full backup of the volume to the staging disk using a database backup tool provided by a vendor of the database storage in response to the first backup request;

[1d] generating, by the computing device, a first point-in-time image of the staging disk for the first time, wherein the first point-in-time image preserves the database structure such that the first point-in-time image can be loaded as an operational database;

[1e] transmitting, by the computing device, a second backup request at a second time to the remote host comprising data indicative of the volume on the database storage to back up according to the protection policy;

[1f] presenting, by the computing device, the staging disk to the remote host so that the remote host can use the database backup tool to perform an incremental backup of the volume to the staging disk using the full backup to generate an incrementally updated backup of the volume from the first time to the second time; and

[1g] generating, by the computing device, a second point-in-time image of the staging disk for the second time, wherein the second point-in-time image backup preserves the database structure such that the second point-in-time image can be loaded as an operational database, thereby allowing the computing device to generate incremental point-in-time images for the volume over time.

**Claim 17:**

[17 preamble]: A non-transitory computer readable medium having executable instructions operable to cause an apparatus to:

[17a] activate a protection policy for database storage at a remote host;

[17b] transmit a first backup request at a first time to the remote host comprising data indicative of a volume on the database storage to back up according to the protection policy;

[17c] present a staging disk to the remote host so that the remote host can perform a full backup of the volume to the staging disk using a database backup tool provided by a vendor of the database storage in response to the first backup request;

[17d] generate a first point-in-time image of the staging disk for the first time, wherein the first point-in-time image preserves the database structure such that the first point-in-time image can be loaded as an operational database;

[17e] transmit a second backup request at a second time to the remote host comprising data indicative of the volume on the database storage to back up according to the protection policy;

[17f] present the staging disk to the remote host so that the remote host can use the database backup tool to perform an incremental backup of the volume to the staging disk using the full backup to generate an incrementally updated backup of the volume from the first time to the second time; and

[17g] generate a second point-in-time image of the staging disk for the second time, wherein the second point-in-time image backup preserves the database structure such that the second point-in-time image can be loaded as an operational database, thereby allowing the computing device to generate incremental point-in-time images for the volume over time.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of a redacted version of the foregoing will be served on Defendant Rubrik, Inc. as follows:

## **BY HAND DELIVERY**

Rubrik, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801


I further certify that a true and correct copy of the foregoing Under Seal filing will be served by e-mail on any counsel of record that makes an appearance pursuant to District of Delaware Local Rule 26.2 within 24 hours of any such appearance.

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
Farnan@rlf.com
